UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOHNATHAN ROBINS,              :
                               :
         Plaintiff             :
                               :
    v.                         : CIVIL NO. 3:CV-11-2271
                               :
PENNSYLVANIA DEPARTMENT OF     : (Judge Kosik)
CORRECTIONS, et al.,           :
                               :
         Defendants

## MEMORANDUM

Plaintiff, Johnathan Robins, an inmate currently confined at the State Correctional Institution at Rockview (SCI-Rockview), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983.  He challenges the classification recommendation that he be required to complete Batterer's Group, and claims that the recommendation was based on false information.  Before the court is a motion for summary judgment filed by Wendy Depew, a Classification Staff Member at SCI-Camp Hill, Pennsylvania.  (Doc. 64.)  For the reasons that follow, the motion will be granted.

**I.     Background and Procedural History**

This action proceeds on an amended complaint. (Doc. 10, Am. Compl.) The

only remaining defendant is Wendy Depew, Classification Staff Member.[1]  Plaintiff alleges that in August of 2010, while confined at SCI-Camp Hill, he met with Depew for the purpose of classification and to determine program participation.  Plaintiff claims that participation in a "Batterer's Group" was never discussed, and that at no time did he ever inform Defendant that he ever assaulted anyone physically or verbally.  (Id. at 2.)

Plaintiff never learned of the "Batterer's Group" recommendation until after his transfer to SCI-Smithfield in October of 2010.  Depew had placed him in this group and stated that Plaintiff informed her that he had verbal and physical fights with his wife.  Plaintiff denies ever making such statements to Depew, and claims that the Batterer's Group has no relation to his underlying conviction.

Grievances and appeals therefrom seeking to be removed from the recommendation/requirement that he participate in a Batterer's Group were unsuccessful.  Plaintiff claims the denial of due process by not being permitted to challenge the false information in his record.  He further claims that his failure to participate in the group will harm his chances for parole and impact his ability to seek custody of his son and find a job once he is released from prison.  He asserts a liberty interest in not being falsely labeled since he has not been convicted on any type of

---

[1] Defendants Department of Corrections, Smeal and Wetzel were previously dismissed from this action on February 21, 2013.  (Docs. 26, 27.)

assault charge. Plaintiff only seeks injunctive relief in the form of the removal of the false information in his record and the recommendation/requirement that he participate in a Batterer's Group. Following the conclusion of discovery, Depew filed the pending motion for summary judgment.

## II. Legal Standard

Defendant moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Goudy-Bachman v. U.S. Dept. of Health & Human Services, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.

4

Id. at 248-49.  When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011)(quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather, it is to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

**III.   Material Facts**

In accordance with M.D. Pa. Local Rule 56.1, Defendant has submitted a statement of material facts in support of her motion for summary judgment.  (Doc. 65.)  Plaintiff has filed an opposing statement of material facts wherein he agrees with all of the facts as set forth and supported by Defendant, with the exception of two paragraphs.  The undisputed facts will now be set forth.  It will be noted where Plaintiff disputes Defendant's facts.

Plaintiff is currently housed at SCI-Rockview.  He was born in March of 1966.

(Doc. 65-1, Pl.'s Dep. at 26.)[2]  He had a son born on February 20, 2008.  (Id. at 35.)  Plaintiff had married the mother of his son the previous month, in January of 2008.  (Id.)  He later learned that his wife, and mother of his son, had been only fourteen (14) years old when they met in late 2006.  (Id. at 44, 29.)

In 2010, Plaintiff was convicted of Involuntary Deviate Sexual Intercourse (IDSI)-Forcible Compulsion, Contact/Comm. W. Minor-Sexual Offenses, and Statutory Sexual Assault.  (Id. at 216-17; Classification Summary.)  As a result, Plaintiff was sentenced to serve a minimum of twelve years to a maximum of thirty years in prison.  (Id.)

Upon entering the Department of Corrections (DOC), inmates are processed through "initial classification" at SCI-Camp Hill.  (Id. at 150, Pl.'s Dep.)  In August of 2010, Plaintiff was seen at SCI-Camp Hill by Defendant Depew, a Classification Staff Member.  Depew met with Plaintiff for the purposes of initial classification, including determining what programs would be recommended for him. (Id. at 229, Am. Compl.)

During initial classification, Depew recommended that Plaintiff participate in Batterer's Group and Sex Offender Program Evaluation.  (Id. at 224, Classification Summary.)  Plaintiff disputes this statement to the extent that he claims that Depew

---

[2] In referencing the record, the court will cite to the docket and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

never discussed this recommendation with him on said date, and that he did not learn of the Batterer's Group recommendation until after his transfer from SCI-Camp Hill. (Doc. 68 at ¶ 10.) Plaintiff has participated in and completed the Sex Offender Program Evaluation insofar as he has taken the violence prevention class. (Id. at 161, Pl.'s Dep.)

Plaintiff believes that the Batterer's Group is intended for people who have committed a battery against a family member. (Id. at 162.) Therefore, he disputes the recommendation that he should participate in the Batterer's Group, because he has never used physical force against his wife or any other family member. (Id. at 161.) He denies that he ever made statements to Depew regarding verbal or physical fights with his wife. (Id. at 229, Am. Compl.)

Plaintiff believes that he must complete the Batterer's Group program in order to obtain a favorable recommendation from the DOC when applying for parole by the Pennsylvania Board of Probation and Parole. (Id. at 193, Pl.'s Dep.) He further believes being labeled a batterer could affect him in the future with respect to obtaining custody of his son and/or visitation rights, his ability to find a job, and his chances of parole. (Id. at 230, Am. Compl.)

Plaintiff alleges that there were other false statements in his initial classification summary, such as a violation of parole by his failure to report from a prior offense and the wrong name of "Miller" appearing in the summary. (Id. at 201,

7

Pl.'s Dep.) Plaintiff is not eligible for parole until he has served his minimum sentence, which will occur on November 19, 2021. (Id. at 216, Classification Summary.)

## IV. Discussion

### A. Batterer's Group

Plaintiff brings his claim under the Fourteenth Amendment's Due Process Clause. The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." A due process claim requires a two-part analysis. First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." Id.

Plaintiff claims that he has a liberty interest in not being "falsely" labeled as a batterer. (Doc. 10, Am. Compl. at 3.) "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005)(citations omitted). Thus, "[a] prisoner may be deprived of a liberty interest in violation of the Constitution in two ways: (1) when severe changes in conditions of confinement amount to a grievous loss that should

8

not be imposed without the opportunity for notice and an adequate hearing, and (2) when state statutes and regulations create a liberty interest in freedom from restraint that imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' thereby triggering due process protection." Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010)(citations omitted).

With respect to liberty interests under the Due Process Clause itself, "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Asquith v. Dept. of Corrections, 186 F.3d 407, 410 (3d Cir. 1999)(quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983).

Consequences that are "qualitatively different" from those usually imposed on a person convicted of a crime can lead to the finding of a protected liberty interest. Vitek v. Jones, 445 U.S. 480, 493 (1980). However, severe changes in conditions of confinement amounting to a grievous loss are required. Renchenski, 622 F.3d at 325. Examples of such changes include forced administration of antipsychotic medication, see Washington v. Harper, 494 U.S. 210, 221-22 (1990), involuntary transfer to a mental hospital, Vitek, 445 U.S. at 492, or forced participation in sex-offender therapy for a prisoner not convicted of a sex offense, Renchenski, 622 F.3d at 326.

With respect to the various alleged "false" information contained in Plaintiff's

9

Classification Summary, the only information that he claims that has affected his conditions of confinement is the requirement that he complete Batterer's Group. As such, because Plaintiff has only asserted that the recommendation to participate in the Batterer's Group resulted in any changed conditions of his confinement, Defendant is entitled to summary judgment with respect to any due process claim pertaining to all other alleged false information other than the recommendation to complete the Batterer's Group.

The court will now examine any due process claim with respect to the recommendation that Plaintiff participate in the Batterer's Group. In Renchenski, the Third Circuit held that an inmate who has never been charged with, or convicted of, a sex offense is entitled to due process before being classified as a sex offender and required to undergo sex offender treatment. Id. at 331. The Third Circuit held that "the highly stigmatizing effects of being labeled a sex offender, when coupled with mandatory behavioral modification therapy, triggers an independent liberty interest emanating from the Due Process Clause of the Fourteenth Amendment." Id. at 328.

In the instant case, Plaintiff challenges being recommended for Batterer's Group. The Renchenski case did not address whether due process is required before recommending that an inmate participate in Batterer's Group. The law on this point is not clear. See Hutchinson v. Smeal, No. 1:11-cv-320, 2013 WL 6567415, * 13 (M.D. Pa. 2013)(Jones, J.)

10

However, even assuming Plaintiff had a liberty interest protected by the Due Process Clause in not being labeled a batterer and assigned to a Batterer's Group, based on the undisputed facts, any such recommendation by Defendant was not inappropriate.  Plaintiff is under the misconception that Batterer's Group is intended for people who have committed a battery against a family member.  (Doc. 65-1 at 162, Pl.'s Dep.)  But, in the instant case, Plaintiff was convicted of Involuntary Deviate Sexual Intercourse (IDSI)-Forcible Compulsion, Contact/Comm. W. Minor-Sexual Offenses, and Statutory Sexual Assault.  One of the categories under which a person commits the offense of IDSI is when the person engaged in deviate sexual intercourse with a person ". . . who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other."  See 18 Pa. Cons. Stat. Ann. § 3123(a).

The undisputed facts of this case reveal that Plaintiff and his wife were married in January 2008 and had a son born in February 2008.  Plaintiff was approximately 40 years old in late 2006 when he met his wife, who was 14 years old at the time.  (Doc. 65-1 at 26, 44, 29, Pl.'s Dep.)  As such, at the time the child was conceived, Plaintiff was approximately 41 years of age and the child's mother was approximately 15 years of age.

It does not matter that Plaintiff claims he never used physical force against his wife, as he claims in the complaint.  He was convicted of the offense of IDSI, which

11

under Pennsylvania law, includes the use of force through non-violent means. See 18 Pa. C.S. § 3123(a)(7). This is demonstrated by the child, who was conceived before they were married, when Plaintiff was 41 years old and the mother was only 15 years old. The Pennsylvania Supreme Court has found that forcible compulsion "includes not only physical force or violation but also moral, psychological, or intellectual force used to compel a person to engage in sexual intercourse against that person's will." Commonwealth v. Rhodes, 510 A.2d 1217, 1226 (Pa. 1986). As such, Plaintiff's conviction involved the use of non-violent force implied though the vast age difference. A recommendation for his placement into the Batterer's Group program was appropriate and consistent with his conviction and sentence, and no due process violation occurred. Summary judgment in favor of Defendant is warranted on this claim.

  B. Parole denial

Plaintiff fares no better with respect to any argument that he has a liberty interest with respect to any future parole consideration. Prisoners have no constitutionally based right to parole under the United States Constitution. See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979); McCrery v. Mark, 823 F. Supp. 288, 293 (E.D. Pa. 1993). While it is true that States may create liberty interests which are protected by the Due Process Clause, Pennsylvania courts have long held that when a convict is sentenced, he or she has no

12

legitimate expectation except to serve the maximum sentence. See Commonwealth v. Daniel, 243 A.2d 400, 403 (Pa. 1968), and that a denial of parole does not implicate a constitutionally protected liberty interest. See Coady v. Vaughn, 770 A.2d 287, 291 (Pa. 2001); Rogers v. Pa. Bd. of Prob. & Parole, 724 A.2d 319, 322-23 (Pa. 1999). Parole is a matter of grace and mercy, and prisoners have no right under either the federal or Pennsylvania Constitutions to be released from custody prior to the expiration of the maximum term of incarceration to which they have been sentenced. See Connecticut Board of Pardons v. Dumschat, 452 U.S. 458 (1981); Greenholtz, 442 U.S. 1 (1979).

Furthermore, Pennsylvania law grants the Board of Probation and Parole vast discretion to grant parole "whenever in its opinion the best interests of the inmate justify or require his being paroled [and] it does not appear that the interests of the Commonwealth will be injured by the inmate's parole." See 61 Pa.C.S. § 6137(a)(i)(ii). However, the Board may not deny parole on constitutionally impermissible grounds or factors that bear no rational relationship to rehabilitation or deterrence. See Block v. Potter, 631 F.2d 233, 237 (3d Cir. 1980). The Board may not act in an arbitrary or capricious manner or with vindictiveness, bias or prejudice. See Stewart v. Pa. Bd. of Probation and Parole, 714 A.2d 502 (Pa. Cmwlth. 1998).

In moving for summary judgment on this claim, Defendant correctly points out that the completion of the Batterer's Group program is not a mandatory requirement

13

of parole. As such, its completion does not automatically guarantee that Plaintiff will be granted parole, and the failure to complete it does not necessarily mean that he will be denied parole. Further, Plaintiff has failed to produce even a shred of evidence with respect to what consideration the Parole Board would give to his lack of participation in the Batterer's Group, and any affect that it would have on a decision as to whether to grant or denial him parole. He simply asserts conclusory allegations that his lack of participation in the Batterer's Group will impact his ability to be granted parole.[3]

C.   Qualified Immunity

Because Defendant has asserted qualified immunity, the court must engage in the two-step analysis set forth in Saucier v. Katz, 533 U.S. 194, 201 (2001). First, the court must decide, based on the relevant set of facts and drawing all inferences in favor of the plaintiff, whether "the facts alleged show the officer's conduct violated a constitutional right." Scott v. Harris, 550 U.S. 372 (2007). After the court has concluded that a constitutional violation has occurred, the court must then decide whether the official "is entitled to qualified immunity despite that violation." Groh v.

---

[3] Plaintiff also fails to offer any evidence whatsoever in support of his similar claims that being labeled a batterer may affect his ability to seek custody of his son or to obtain employment. Such claims that such information contained in his DOC Classification Summary will have an effect on these issues is speculative at best. Moreover, the Classification Summary fully supports the recommendation that Plaintiff participate in the Batterer's Group program.

14

Ramierez, 540 U.S. 551, 563 (2004).  This second step requires a court to answer "whether it would be clear to a reasonable officer that this conduct was unlawful in the situation he confronted." Id. (quoting Saucier, 533 U.S. at 202).

Without unnecessary elaboration, Defendant's argument that she should be entitled to qualified immunity with respect to Plaintiff's claims is well-taken for the reasons stated in Defendant's brief in support of summary judgment.  Even in the light most favorable to Plaintiff, a reasonable person in Defendant's position could not have known that due process was required before recommending that Plaintiff participate in the Batterer's Group.  The law was not at that time, and is still not today, clearly established with respect to this issue.  See Hutchinson v. Smeal, No. 1:11-cv-320, 2013 WL 6567415, * 13 (M.D. Pa. 2013).   However, it was clearly established that Plaintiff's underlying offense and the vast difference in age between Plaintiff and his wife established the necessary force to support the Batterer's Group recommendation made by Depew.  For these reasons, Depew could not have reasonably known that her conduct violated a clearly established right.

## IV. Conclusion

For all of the above reasons, Defendant's motion for summary judgment will be granted.  An appropriate order follows.